No. 26,772.

THE BADGER LUMBER AND COAL Co., *Appellant,* v. C. H. SCHMIDT
and CLARENCE SCHMIDT, Copartners, doing business as C. H.
SCHMIDT & SON, HOMER W. WILSON et al., *Appellees.*

No. 26,773.

THE BADGER LUMBER AND COAL Co., *Appellant,* v. C. H. SCHMIDT and
CLARENCE SCHMIDT, Partners, doing business as C. H. SCHMIDT &
SON, J. E. JOHNTZ and DAISY JOHNTZ, his wife, *Appellees.*

### SYLLABUS BY THE COURT.

1. MECHANICS' LIENS—*Lien Statement—Necessity of Designating Contractor.*
A lien statement filed by a subcontractor to subject the property of an owner
to liability for materials furnished to the principal contractor and used by the
latter to improve the owner's property is fatally defective if it fails to state
the name of the contractor as the statute prescribes—following *Lumber Co.
v. Washington,* 80 Kan. 613, 103 Pac. 80.

2. SAME—*Lien Statement—Amendment—Discretion of Court.* Where a lien
statement is properly amendable, the granting of permission to amend is
ordinarily within the sound discretion of the trial court; and where a motion
to amend was not filed until some fourteen months after the filing of the lien
statement nor until after the action to foreclose the lien was begun, tried, and
decided, the overruling of such belated motion does not disclose abuse of
the trial court's discretion.

3. SAME—*Property Subject to Lien — Nature of Improvement.* Rule followed
that an owner's real property is not to be subjected to a lien for materials
which do not enter into the construction of some improvement which be-
comes part of the realty—following *Sash & Sales Co. v. Early et al.,* 117 Kan.
425, 232 Pac. 232.

4. SAME—*Lien Statement—Insufficiency Not Aided by Petition.* A failure to
conform to a statutory requisite in the recitals of a lien statement, such as
designating the contractor to whom the materials were furnished and by
whom they were used in the improvement of the property sought to be sub-
jected to a subcontractor's lien, is not aided by the allegations of the sub-
contractor's petition in an action to enforce the lien, as the lien statement
filed for record must be legally sufficient in itself, in order to authorize its
enforcement.

Appeals from Dickinson district court; CASSIUS M. CLARK, judge. Opinion
filed December 11, 1926. Affirmed.

*Matt Guilfoyle,* of Abilene, for the appellant.

*S. S. Smith,* of Abilene, for the appellees.

Mechanics' Liens, 40 C. J. pp. 64 n. 59, 234 n. 91, 235 n. 2, 253 n. 25, 435 n. 88;
18 R. C. L. 937.

Badger Lumber & Coal Co. v. Schmidt.

The opinion of the court was delivered by

DAWSON, J.: In these two appeals the validity of subcontractors' liens was drawn in question.

In case No. 26,772, it appears that plaintiff sought to enforce a lien for lumber and materials supplied for the erection of a house in Abilene for Homer Wilson and wife, the appellees. The last admitted item of materials so furnished was delivered on December 24, 1923, and plaintiff's verified lien statement as a subcontractor was not filed with the clerk of the district court until February 27, 1924. This statement did not set forth the name of the contractor unless it might be implied from the allegation that—

"C. H. Schmidt and Clarence Schmidt did purchase . . . certain building material, according to schedule hereby annexed, . . . and said material was actually used in the . . . erection of said buildings [on Wilson's property described]. . . . That there is due and owing the said The Badger Lumber and Coal Co., from the said 'C. H. Schmidt and Clarence Schmidt for said materials the sum of $4,321.44, with interest."

Issues were joined between plaintiff and Wilson and wife, and at the trial it was announced that Schmidt & Schmidt had been adjudged bankrupts since the action was begun. The cause was tried before a referee, who made findings of fact and conclusions of law, all favorable to Wilson and wife, and judgment was entered accordingly.

Plaintiff appeals, urging the sufficiency of the recitals in the lien statement to show that Schmidt & Schmidt were the contractors, that plaintiff should have been permitted to make a belated amendment to its lien statement, and that certain lumber supplied by plaintiff to build a cupboard on January 3, 1924, should be considered as a lienable item so as to carry the account down to a time within 60 days of the filing of the lien statement.

Touching these points in order, we are virtually urged to disregard and overrule the case of *Lumber Co. v. Washington,* 80 Kan. 613, 103 Pac. 80, where it was said:

"The requirement of the mechanic's lien statute that the statement filed by one claiming a subcontractor's lien must, among other matters, state the name of the contractor is not met by a recital that the material was sold to a designated person and by him used in constructing a building upon land belonging to another, although the person so designated was in fact the contractor. Such lien statement is fatally defective unless it shows by express averment or by

reasonable implication that the purchaser of the material made the improvement under contract with the owner." (Syl.)

Our earlier case of *Sash Co. v. Heiman*, 71 Kan. 43, 80 Pac. 16, was to the same effect. The rule declared in these cases has substantial support in 40 C. J. 234, 235, and 18 R. C. L. 926, 927, 937, although a more liberal attitude toward defective recitals in lien statements is shown in certain textbooks covering this particular subject. See Bloom's Law of Mechanics' Liens and Building Contracts, §§ 371, 372, and Supplement of 1911 thereto; Rockel on Mechanics' Liens, §§ 111, 112. Our code provides that lien statements "may be amended by leave of court in furtherance of justice as pleadings may be in any matter, except as to the amount claimed" (Civ. Code, § 653; R. S. 60-1405); and this court has recognized and applied this rule where it seemed practical and proper to do so. (*Lumber Co. v. Collinson*, 97 Kan. 791, 156 Pac. 724; *Lumber Co. v. Blanch*, 107 Kan. 459, 192 Pac. 742.) In the Collinson case we said:

"Excessive strictness of construction is not required or permitted either by statute or by decision in this state. (Gen. Stat. 1909, § 9850; *Presbyterian Church v. Santy*, 52 Kan. 462, 34 Pac. 974; *Wall Paper Co. v. Perkins*, 90 Kan. 725, 136 Pac. 324.) . . . This was fully recognized in *Atkinson v. Woodmansee*, 68 Kan. 71, 74 Pac. 640. (See, also, *De Klyn v. Gould*, 165 N. Y. 282, 59 N. E. 95, 80 Am. St. Rep. 719; Phillips on Mechanics' Liens, § 342; Bloom, Law on Mechanics' Liens, § 848.)" (p. 792.)

However, the rule announced in *Lumber Co. v. Washington*, supra, is so thoroughly embedded in our local jurisprudence, and is one so easy to conform to by those who seek to compel one man to pay another man's debt, that this court would not be justified in overruling it. In general accord with its tenor and spirit are our recent cases, (*Baker v. Griffin*, 120 Kan. 448, 243 Pac. 1057; *Spaulding Lumber Co. v. Slusher*, 121 Kan. 155, 246 Pac. 999; *Cobb v. Burford*, 121 Kan. 199, 246 Pac. 1009.)

The conclusion just reached reduces to little present importance the question whether the trial court should have permitted the lien statement to be amended to show "that C. H. Schmidt and Clarence Schmidt, named therein, were contractors and had a contract with the owner named therein, to build the dwelling house mentioned in said lien." The motion to permit such amendment was filed on April 22, 1925, some fourteen months after the filing of the defective lien statement, and long after Schmidt & Schmidt had been adjudged bankrupts. Granting that if timely application had been made the

amendment should have been allowed, there certainly was no abuse of discretion in denying a motion to amend a lien statement fourteen months after it was filed and more than six months after the issues had been joined in an action to foreclose the lien. (*Bank v. Badders*, 96 Kan. 533, syl. ¶ 3, 152 Pac. 651, and citations; *Supply Co. v. Oil Co.*, 110 Kan. 468, 204 Pac. 692.) In Rockel on Mechanics' Liens it is said:

"§ 123. As a general rule a claim or statement cannot be amended after the time limit for filing the same had expired, and the amendment should not be allowed where it will materially interfere with intervening rights. If no one is prejudiced by the proposed amendment, it will generally be allowed under equitable principles. Indeed, some statutes particularly authorize the amendment of statements in cases where justice may be subserved thereby, and such statutes have been held to be constitutional. But without a statutory provision to that effect courts have no right to permit defects in claims or statements to be cured by matters set-up in the pleadings. . . . Since there is no general power to amend, the question as to what defects are amendable must be determined solely by the statute that permits them to be made. As a general rule any error may be corrected by amendment or by filing a new claim before the time limit has expired, but not afterwards. . . . Of course immaterial defects, inadvertently made, where no one is prejudiced, are always amendable. . . . And even if the errors are honestly made the claimant may be estopped from amending to his advantage." (p. 331 *et seq.*)

It is finally argued that defendants Wilson and wife "should be estopped from denying that the cupboard was real estate." On that subject the referee found:

"X. Items charged on January 3, 1924, consisted of 82 square feet ⅝ x 4 ceiling and 10 feet wood stop, in the sum of $4.75. These items were delivered on that date by plaintiff to the said property. These items were used in the construction of a movable cupboard in the basement of said building. Said cupboard was not included in the contract between Homer W. Wilson and Schmidt & Son, and was no part of the said building, was built in the center of the basement, then moved to the side, but was not attached to the walls or floor, or ceiling in any way. These items were delivered by plaintiff to property the same as other items and no special purpose was given for their use."

From this finding of fact plaintiff affects to discern some element of misconduct on the part of the Wilsons which tended to mislead plaintiff into supplying the materials for this cupboard. But the referee and the trial court were unable to discover anything reprehensible in the conduct of the Wilsons. Neither can we. The rule announced in *Sash & Sales Co. v. Early et al.*, 117 Kan. 425, 232 Pac. 232, controls here:

"To uphold a lien for material purchased for a building on the land of the owner it must appear that it entered into the construction of the building and became a part of the realty." (Syl. ¶ 2.)

No prejudicial error appears in case No. 26,772, and the judgment therein is affirmed.

In case No. 26,773 the same plaintiff sought to assert and foreclose a mechanic's lien for materials supplied to Schmidt & Schmidt for the alteration and repair of a house in Abilene belonging to the appellees, Johntz and wife. Plaintiff's lien statement filed on April 16, 1924, was defective in the same particular as that just discussed in case No. 26,772. It did not state the name of the contractor. (R. S. 60-1402, 60-1403; *Sash Co. v. Heiman,* supra; *Lumber Co. v. Washington,* supra.) About a year later, on April 22, 1925, plaintiff filed a motion for leave to amend its lien statement so as to show "that Schmidt & Son were contractors and had a contract with the owner, named therein, to build the dwelling house mentioned in said lien." This motion was denied. Ere that motion was filed the cause had been tried before the same referee who served in case No. 26,772. In this case the referee found:

"12. C. H. Schmidt and Clarence Schmidt are not mentioned as contractors in said lien and no contractual relations are mentioned in said lien between the defendants Johntz and the defendants Schmidt.

"CONCLUSIONS OF LAW.

.   .   .   .   .   .   .   .   .   .   .   .   .

"2. Said lien is fatally defective and void for the reason that it does not show by express averment or by reasonable implication that the purchaser of the material made the improvement under contract with the owner.

"3. Said plaintiff is not entitled to a lien on said premises for any sum whatever."

The trial court confirmed and approved the referee's report and entered judgment for defendants, Johntz and wife.

The main point contended for in this appeal—that the lien statement was sufficient or was subject to an amendment which should have been permitted—is foreclosed by what has been said in the companion case just decided.

It is argued that the want of the statutory requirement that the lien statement shall set forth, among other details, the name of the contractors, was sufficiently supplied by an allegation in plaintiff's petition in the action to foreclose the purported lien, wherein it was pleaded that C. H. Schmidt and Clarence Schmidt were contractors

Badger Lumber & Coal Co. v. Schmidt.

and had a contract with J. E. Johntz, the owner, for the alteration and repair of his residence. But the petition and cause of action have to draw their virtue from a valid and binding lien; the lien statement acquires no virtue from mere elaboration of plaintiff's pleadings in a cause of action seeking to enforce the lien. In Bloom's Law of Mechanics' Liens and Building Contracts, p. 369, it is said:

"A failure to state an essential fact in the claim, such as the name of the person to whom the materials were furnished, is not aided by the averment of the fact in the complaint, as the claim which is filed for record must be complete in itself at that time, in order to authorize its enforcement."

We note the observation with which appellant opens its argument:

"The appellant is in the unique position of having a motion overruled to amend the mechanic's lien statement because the trial court thought it sufficient and an amendment unnecessary, and then later to have the lien declared void because it was not amended."

But a painstaking examination of the record does not disclose that the trial court announced any reason for its ruling on plaintiff's motion to amend the lien statement. No reason is given; but at least one good reason manifestly appears. Issues had been joined, the cause referred, tried, decided, and reported to the district court, before any motion to amend was presented. Quite properly it might have been denied because of its belated presentation. It follows that this judgment must also be affirmed.

The judgments in both appeals are affirmed.